*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re T. A. KARAN, Minor.

UNPUBLISHED
June 29, 2023

No. 363165
Wayne Circuit Court
Family Division
LC No. 2021-000475-NA

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his son, TK, under MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days without seeking custody), (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm to child if returned to parent). We affirm.

On appeal, respondent argues that the trial court clearly erred by finding that there existed clear and convincing evidence of the statutory grounds for termination and by finding by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests. In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to appeals challenging the statutory grounds for termination and the best-interests determination:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j) were implicated in this case, and they authorize termination under the following circumstances:

(a) The child has been deserted under either of the following circumstances:

* * *

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In *In re Mota*, 334 Mich App at 321, this Court discussed the best-interests analysis, stating as follows:

With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic

-2-

violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

Petitioner, Department of Health and Human Services (DHHS), presented evidence that while intoxicated respondent strangled TK's mother in three separate instances on the same night and which caused TK's mother to vomit blood and suffer nonfatal injuries. As a result, respondent was convicted of assault by strangulation, MCL 750.84(1)(b), and sentenced to six months in jail.[1] The DHHS also presented evidence that respondent had felony and misdemeanor drug convictions, that there were outstanding warrants for his arrest in Wisconsin and Minnesota for drug-possession offenses and jumping bail, that respondent failed to complete 49 out of 53 required drug screens, that respondent did not obtain suitable housing, that he failed to submit to nine attempted housing assessments, that respondent was unwilling to provide documentation of his income despite 12 requests, and that he attended only 24 out of 63 scheduled visitations, the last one being about eight months before the termination hearing.

The DHHS further presented evidence that respondent stopped attending court hearings about nine months before termination of his rights, including the termination hearing, that he had not communicated with DHHS personnel during that period, that his whereabouts were unknown, that respondent refused to engage in domestic-violence counseling despite seven referrals, that he was referred to substance-abuse treatment programs on seven occasions and participated for only three months before being terminated for lack of participation, that he did not benefit from that limited three-month involvement, and that he did not engage in mandatory parenting classes even though seven referrals had been made. Finally, the DHHS presented evidence that TK was thriving in his foster-care placement, which was secure, structured, and safe, that he had been in the care of his foster parents for approximately 1½ years, that the foster parents wished to adopt TK, that the DHHS had explored relative placements for the child, but none of the potential relatives were deemed appropriate, and that respondent never sought custody of TK.

---

[1] We note that TK tested positive at birth for methamphetamine, amphetamine, cocaine, and tetrahydrocannabinol, necessitating neonatal intensive care.

We conclude that the evidence supporting termination in this case was overwhelming and insurmountable and that the cursory, fragmented arguments made by respondent are not supported by the factual record and/or the law. We hold that the trial court did not clearly err by finding that there existed clear and convincing evidence of the statutory grounds for termination and by finding by a preponderance of the evidence that termination of his parental rights was in the child's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly